Wilfred P. Coronato (WC-6200)
Bart A. Whitley (BW-3010)
HUGHES HUBBARD & REED LLP
A NEW YORK LIMITED LIABILITY PARTNERSHIP
101 HUDSON STREET, SUITE 3601
JERSEY CITY, NEW JERSEY 07302-3910
Telephone: (201) 536-9220
Attorneys for Defendant Merck & Co., Inc.

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMMA MAHURON, | ) |
| | ) |
| Plaintiff, | )  Civil Action No. _____ |
| | ) |
| v. | ) |
| | )  **NOTICE OF REMOVAL** |
| MERCK & CO., INC., | ) |
| | ) |
| Defendant. | ) |

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446 Defendant

Merck & Co., Inc. ("Merck") hereby gives notice that the above-captioned action, Civil

Action No. L-5863-07, pending in the Superior Court of New Jersey, Law Division,

Middlesex County, is hereby removed to the United States District Court for the District

of New Jersey. In support of removal, Merck respectfully states to the Court the

following:

### THE FOSAMAX® MULTIDISTRICT LITIGATION

1.      This action involves allegations regarding the prescription medication

FOSAMAX®. On August 16, 2006, the Judicial Panel on Multidistrict Litigation ("MDL

Panel") issued an order transferring 18 FOSAMAX® products liability cases to the

United States District Court for the Southern District of New York (Keenan, J.) for

coordinated pretrial proceedings under 28 U.S.C. § 1407. *In re Fosamax Products Liability*

*Litigation*, MDL No. 1789. Processes for quickly sending additional related cases to Judge Keenan have been set in place. To date, the MDL Panel has issued 26 Conditional Transfer Orders, at least 67 cases involving FOSAMAX® have been transferred to MDL-1789, and there are a total of 169 cases pending in the MDL, including cases filed directly in the Southern District of New York. Merck will seek the transfer of this action to MDL-1789, and will in the next week provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

## GROUNDS FOR REMOVAL

2.      On or about June 29, 2007, Plaintiff commenced this action entitled *Mahuron v. Merck & Co., Inc.*, Case No. L-5863-07, against Merck in the Superior Court of New Jersey, Law Division, Middlesex County.

3.      For the reasons set forth in more detail below, this Court should assume jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this matter is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

## I.      MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

4.      Plaintiff filed her Complaint in the Superior Court of New Jersey, Law Division, Middlesex County on or about June 29, 2007. Merck has not yet been served with a copy of the Complaint. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

5.      No further proceedings have been had in this action.

6.  Venue is proper in this Court because it is "the district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a). Therefore, this action is properly removed to the District of New Jersey pursuant to 28 U.S.C. § 110.

7.  No previous application has been made for the relief requested herein.

8.  Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders received by Merck, which include the Complaint and Civil Cover Sheet, are attached hereto at Exhibits A and B.

9.  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of New Jersey, Law Division, Middlesex County.

## II.  REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

10.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A.  The amount in controversy requirement is satisfied.

11.  It is apparent from the face of the Complaint that Plaintiff Tamma Mahuron seeks recovery of an amount in excess of $75,000, exclusive of costs and interest. Plaintiff alleges that, as a result of ingesting FOSAMAX®, she developed "osteonecrosis of the jaw," which Plaintiff alleges "is a serious medical event and can result in severe disability and death," causing her to suffer "diffuse jaw pain, loss of bone mass in the jaw, and osteonecrosis of the jaw." (Complaint ¶ 2, 14, 27). Mrs.

3

Metcalf claims that, as a result of using FOSAMAX®, she suffered "severe mental and physical pain and suffering, " as well as "permanent injuries and emotional distress." (Complaint ¶ 28.)  Plaintiff seeks both compensatory and "treble and punitive damages."  (*See* Complaint at 7).

     12.    While there is not a record of prior cases that specifically involve osteonecrosis of the jaw – a fact which may be attributable to the fact that osteonecrosis of the jaw is a rare disorder and cases alleging liability against pharmaceutical manufacturers for allegedly causing the same had, prior to very recently, been non-existent – there are:

- numerous reported cases in which jaw or similar facial injury led to jury or court awards far in excess of $75,000.  *See, e.g., Howie v. Walsh*, 609 S.E.2d 249 (N.C. App. 2005) (addressing jury award of $300,000 against dentist who fractured patient's jaw during procedure); *Becker v. Woods*, 806 N.Y.S.2d 704 (N.Y. App. Div. 2005) (affirming jury award of $840,000 in damages where dental patient suffered from permanent paresthesia); *Preston v. Dupont*, 35 P.3d 433 (Colo. 2001) (addressing jury award of more than $250,000 for damage to alveolar nerve in jaw); *Bowers v. Liuzza*, 769 So.2d 88 (La. App.), *writ. denied*, 776 So.2d 468 (La. 2000) (finding that minimum adequate damage award for nerve damage in jaw was an amount that exceeded $175,000); *Becker v. Halliday*, 554 N.W. 2d 67 (Mich. App. 1996) (jury award of $200,000 in damages, where syringe lodged in upper jaw); *Herpin v. Witherspoon*, 664 So.2d 515 (La. App. 1995) (plaintiff entitled to receive more than $75,000 as a

4

result of temporomandibular joint (TMJ) dysfunction); *Washburn v. Holbrook*, 806 P.2d 702 (Or. App. 1991) (affirming jury finding of $400,000 in damages as a result of damage to jaw during root canal); and

- numerous prior cases that reveal that potential awards based on osteonecrosis or avascular necrosis of the hip, knee, or other joint, exceed the $75,000 jurisdictional amount. *See, e.g., Barbee v. United States*, 2005 W.L. 3336504, at *1-2 (W.D. Wis. 2006) (finding that plaintiff suffered nearly $700,000 in damages for hip injuries that included avascular necrosis); *Shaver v. United States*, 319 F.Supp. 2d 649 (M.D.N.C. 2004) (awarding more than $75,000 in damages for osteonecrosis in knee caused by automobile accident); *Piselli v. 75th Street Medical*, 808 A.2d 508 (Md. 2002) (addressing jury award of $410,000 for medical malpractice that led to avascular necrosis of the hip); *Collier v. Cawthon*, 570 S.E.2d 53 (Ga. App. 2002) (affirming jury award of $170,000 for avascular necrosis of the hip).

13.     The Plaintiff's claims of "severe and permanent" injuries, and the compensatory and punitive damages that they seek thus far exceed this Court's minimum $75,000 jurisdictional limit.

### B.     There is complete diversity between the parties.

14.     According to the Complaint, Plaintiff was at the time of the filing of the Complaint and is now a citizen of Indiana. (Complaint ¶ 1.)

15.     Merck is now, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place

of business in New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1). (Complaint ¶ 3.)

16.    Hence, there is complete diversity between the parties, and this court has subject matter jurisdiction under 28 U.S.C. § 1332.

**C.    The action is properly removed under 28 U.S.C. § 1446 because no defendant that has been *joined and served* is a resident of New Jersey.**

17.    Merck removes this case pursuant to § 1441(b) on the grounds that "none of the parties in interest *properly* joined *and served* as defendants is a citizen of the state in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added).

18.    At the time of the filing of this Notice of Removal, Merck has not been served with a summons and complaint in this action.

19.    As this Court held in *Frick v. Novartis Pharmaceuticals Corp.*, 2006 W.L. 454360 (D.N.J. 2006), removal of this case is proper under the plain language of 28 U.S.C. § 1441(b), because there is no defendant in this case who has been properly joined and served and who is a resident of New Jersey, the state in which this action was brought.   *Frick*, 2006 W.L. 454360, at *3.

6

WHEREFORE, Defendant Merck respectfully removes this action from the Superior Court of New Jersey, Law Division, Middlesex County to this Court pursuant to 28 U.S.C. § 1441.

Dated: July 3, 2007

> HUGHES HUBBARD & REED LLP
> A New York Limited Liability Partnership
> Attorneys for Defendant
> Merck & Co., Inc.
>
>
> By:   s/ Bart A. Whitley
>       Wilfred P. Coronato
>       Bart A. Whitley

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the within Notice of Removal as well as a Notice of Filing Notice of Removal was served this day by facsimile and Federal Express in compliance with Rule 5 of the Federal Rules of Civil Procedure upon counsel for plaintiff, Tracy A. Finken, Esq., Anapol, Schwartz, Weiss, Cohan Feldman & Smalley, P.C., 1040 Kings Highway North, Cherry Hill, New Jersey 08034.

Dated: July 3, 2007

> By:   /s Bart A. Whitley
>       Wilfred P. Coronato
>       Bart A. Whitley

# EXHIBIT A

ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.
BY:    DAVID JACOBY, ESQUIRE
       TRACY A. FINKEN, ESQUIRE
       GREGORY S. SPIZER, ESQUIRE
1040 KINGS HIGHWAY NORTH, SUITE 304
CHERRY HILL, NJ 08034
(856) 482-1600; FAX (856) 482-1911
ATTORNEY FOR PLAINTIFFS

- - CD & RECEIVED #1

07 JUN 29  A:III:15

... ... ...
... ITY CLERK
... ...IOR COURT

IN THE SUPERIOR COURT OF NEW JERSEY
LAW DIVISION – MIDDLESEX COUNTY

| | | |
|---|---|---|
| TAMMA MAHURON | : | Civil Action No.  $L-5863-07$ |
| Plaintiff | : | |
| | : | Fosamax Litigation |
| v. | : | |
| | : | |
| MERCK & CO., INC. | : | COMPLAINT, DEMAND |
| Defendant | : | FOR JURY TRIAL, |
| | : | DESIGNATION OF TRIAL |
| | | COUNSEL AND NOTICE OF |
| | | NO OTHER ACTIONS |

Plaintiff, Tamma Mahuron, by way of Complaint against Defendant, upon information
and belief, alleges as follows:

### PARTIES—PLAINTIFF

1.     Plaintiff, Tamma Mahuron, is a citizen of Indiana, residing at 6112 West
Coletrain Hill Road, Connersville, IN 47331.

2.     Plaintiff, Tamma Mahuron, regularly ingested Fosamax in the months and years
leading up to her diagnosis of osteonecrosis of the jaw.

## PARTIES—DEFENDANT

3.      Defendant, Merck & Co., Inc. (hereinafter "Merck"), is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, White House Station, NJ 08889.

4.      At all times relevant hereto, Defendant Merck was engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling, and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical, Fosamax.

5.      At all relevant times, Defendant was responsible for, or involved in, designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing and/or selling its product, the prescription drug Fosamax.

6.      In September 1995, the United States Food and Drug Administration ("FDA") approved Defendant's compound alendronate for various uses, including the treatment of osteoporosis and Paget's Disease. Alendronate is marketed by Defendant as "Fosamax."

7.      Fosamax falls within a class of drugs known as bisphosphonates, which are used for treating bone conditions such as ostepenia, osteoporosis and Paget's disease. There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphosphonates include the following: pamidronate (Aredia); ibandronate (Bondronat); and alendronate (Fosamax). The non-nitrogenous bisphosphonates include the following: etrinodate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate contains a nitrogen atom. The Physicians Desk Reference ("PDR") for Fosamax confirms that the molecule contains a nitrogen atom.

8.      Throughout the 1990's and 2000's, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the

2

nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Defendant, particularly with its heightened knowledge and experience, knew or should have known that Fosamax, as a nitrogenous bisphosphonates, shared a similar adverse event profiles to the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

9.      Defendant, particularly with its heightened knowledge and experience, knew or should have known that bisphosphonates, including Fosamax, inhibit endothelial cell function. Similarly, Defendant, particularly with its heightened knowledge and experience, knew or should have known that bisphosphonates also inhibit vascularization of the affected area and induce ischemic changes specific to patient's mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

10.      Defendant, particularly with its heightened knowledge and experience, also knew or should have known that these factors combine to create a compromised vascular supply in the affected area. As a result, a minor injury or disease can turn into a non-healing wound. That, in turn, can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

11.      Dentists are now being advised by dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient on Fosamax.

12.      Once the jaw complications begin and become symptomatic, they are very difficult to treat and typically are not reversible.

13.      Shortly after Defendant began selling Fosamax, reports of osteonecrosis of the jaw and other various dental complications among Fosamax users began surfacing, indicating

3

that Fosamax shared the effects of other nitrogenous bisphosphonates. Despite this knowledge, Defendant failed to implement further study risk of osteonecrosis of the jaw relative to Fosamax. Rather than evaluating and verifying the safety of Fosamax with respect to osteonecrosis of the jaw, Defendant proposed further uses of Fosamax, such as Fosamax-D, and sought to extend the exclusivity period of Fosamax through 2018.

14.    Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

15.    Since Fosamax was released, the FDA has received a significant number of reports of osteonecrosis of the jaw among users of Fosamax.

16.    On August 24, 2004, the FDA posted its ODS Postmarketing Safety Review on bisphosphonates, including Fosamax. This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

17.    As a result of the FDA review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The review indicated that the osteonecrosis of the jaw was a class effect which specifically extended to the oral bisphosphonate, Fosamax.

18.    Thereafter, the FDA recommended and stated that the labeling for Fosamax should be amended by Defendant to specifically warn about the risk of osteonecrosis of the jaw. Defendant refused to accede to the FDA's request.

19.    Rather than warn patients, and despite Defendant's knowledge about the increased risk of osteonecrosis of the jaw on patients using Fosamax, Defendant continued to defend Fosamax, mislead physicians and the public, and minimize unfavorable findings.

4

20.     Fosamax is one of Defendant's top selling drugs, averaging more that $3 billion a year in sales.

21.     Consumers, including Plaintiff, who have used Fosamax for treatment of osteoporosis, had several alternative safer products available to treat their condition.

22.     Defendant knew of the significant risk of dental and oral complications caused by ingestion of Fosamax, but Defendant did not adequately and sufficiently warn consumers, including Plaintiffs, or the medical community, of such risks.

23.     As a direct result, Plaintiff was prescribed Fosamax and has been permanently injured, having suffered serious injuries and damages from the ingestion of Fosamax. Plaintiff requires and will in the future require ongoing medical care and treatment.

24.     Plaintiffs have suffered mental anguish from the knowledge that Plaintiff will have life-long complications as a result of the injuries Plaintiff sustained from the use of Fosamax.

25.     Plaintiff was prescribed and began taking Fosamax in approximately 2002.

26.     Plaintiff used Fosamax as prescribed and in a foreseeable manner.

27.     As a direct and proximate result of using Fosamax, Plaintiff has suffered diffuse jaw pain, loss of bone mass in the jaw and osteonecrosis of the jaw and is currently in treatment for her condition.

28.     Plaintiff, as a direct and proximate result of using Fosamax, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

29.     Plaintiff used Fosamax which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

5

30.    Plaintiff would not have used Fosamax had Defendant properly disclosed the risks associated with the drug.  Alternatively, Plaintiff would have known of the risks of Fosamax and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

31.    Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking Fosamax.

32.    As a result of Defendant's actions, Plaintiff and her prescribing physicians were unaware, and could not reasonably know or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

## COUNT I
### PLAINTIFF v. MERCK
### PRODUCTS LIABILITY—FAILURE TO WARN (N.J.S.A. 2A:58C-2 *et seq.*)

33.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

34.    Defendant Merck researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the pharmaceutical, Fosamax, and in the course of same, directly advertised or marketed the product to the FDA, consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Fosamax.

35.    Fosamax was under the exclusive control of Defendant as aforesaid, and was unaccompanied by appropriate warnings regarding all possible adverse side effects and complications associated with the use of Fosamax, and the comparative severity, duration and the extent of the risk of injury with such use.

6

36. Defendant Merck has failed to timely and reasonably warn of material facts regarding the safety and efficacy of Fosamax so that no medical care provider would have prescribed, or no consumer would have used Fosamax had those facts been made known to such providers and consumers.

37. Defendant Merck has failed to perform or otherwise facilitate adequate testing in that such testing would have shown that Fosamax posed serious and potentially life-threatening side effects and complications with respect to which full and proper warnings accurately and fully reflecting the symptoms, scope and severity should have been made to medical care providers, the FDA and the public, including Plaintiff.

38. Fosamax, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by Defendant, was defective due to inadequate post-marketing warnings and/or instruction because, after Defendant knew or should have known of the risk of serious and potentially life-threatening side effects and complications from the use of Fosamax, Defendant failed to provided adequate warnings to medical care providers, the FDA and the consuming public, including Plaintiff, and continued to promote Fosamax aggressively.

39. As direct and proximate result of the conduct of Defendant Merck as aforesaid, Plaintiff was diagnosed with osteonecrosis of the jaw and trigeminal neuralgia related to osteonecrosis of the jaw causing permanent injury to Plaintiff, Tamma Mahuron, and causing physical, emotional and economic injury to Plaintiff, Tamma Mahuron.

**WHEREFORE**, Plaintiff demands judgment against Defendant Merck for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

7

## COUNT II
### PLAINTIFF v. MERCK
### PRODUCTS LIABILITY—DEFECTIVE DESIGN (N.J.S.A. 2A:58C-2 *et seq.*)

40.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

41.     Defendant is a researcher, developer, manufacturer, distributor, marketer, promoter, supplier and seller of Fosamax, which is defective and unreasonably dangerous to consumers.

42.     The aforementioned drug is defective in its design or formulation in that it is not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation. The aforementioned drug is defective in design or formulation in that it lacks efficacy and/or it poses a greater likelihood of injury than similar drugs on the market and is more dangerous than ordinary consumers can reasonably foresee.

43.     The defective condition of the aforementioned drug renders it unreasonably dangerous, and it was in this defective condition at the time it left the hands of Defendant. The aforementioned drug was expected to and did reach consumers, including Plaintiff, without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

44.     Plaintiff was unaware of the significant hazards and defects in the aforementioned drug. The aforementioned drug was unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user. During the period that Plaintiff was taking the aforementioned drug, the medication was being utilized in a manner that was intended by Defendant. At the time Plaintiff received and consumed the aforementioned drug, it was represented to be safe and free from latent defects.

8

45.     Defendant is strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendant because of the design defects.

46.     Defendant knew or should have known of the danger associated with the use of the aforementioned drug, as well as the defective nature, but has continued to design, manufacture, sell, distribute, market, promote and/or supply the aforementioned drug so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the aforementioned drug.

47.     As a direct and proximate cause of the design defect and Defendant's misconduct as set forth herein, Plaintiff was diagnosed with osteonecrosis of the jaw causing permanent injury and causing physical, emotional and economic injury to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### COUNT III
### PLAINTIFF v. MERCK
### PUNITIVE DAMAGES UNDER THE PRODUCTS LIABILITY ACT (N.J.S.A.2A:58C-1)

48.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

49.     Plaintiff is entitled to punitive damages because Defendant's failure to warn was reckless and without regard for the public's safety and welfare. Defendant misled both the medical community and the public at large, including Plaintiff herein, by making false representations about the safety of Fosamax. Defendant downplayed, understated and/or disregarded its knowledge of the serious and permanent side effects and risks associated with the

9

use of Fosamax despite available information demonstrating that Fosamax was likely to cause serious and even fatal side effects to users.

50.     Defendant was or should have been in possession of evidence demonstrating that Fosamax caused serious side effects. Nevertheless, Defendant continued to market Fosamax by providing false and misleading information with regard to safety and efficacy.

51.     Defendant failed to provide warnings that would have dissuaded physicians from prescribing Fosamax and consumers from purchasing and consuming Fosamax, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and/or purchasing and consuming Fosamax.

**WHEREFORE**, Plaintiff demands judgment against Defendant Merck for compensatory damages and punitive damages, together with interest, costs of suit and attorneys' fees and such other relief as the Court deems proper.

## COUNT IV
### PLAINTIFF v. MERCK
### BREACH OF EXPRESS WARRANTY

52.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

53.     Merck manufactured, sold, distributed, marketed, and/or promoted Fosamax used by Plaintiff, and this drug was expected to, and did reach Plaintiff without a substantial change in condition.

54.     Defendant Merck, its agents and employees, in manufacturing, selling, distributing, supplying, marketing and/or promoting the drug Fosamax, expressly warranted that the drug was safe and effective as a medication for osteoporosis.

10

55.     Defendant Merck, its agents and employees, breached this warranty in that Fosamax was not safe and effective for its intended, reasonably foreseeable use as a medication for osteoporosis because of the risk of osteonecrosis of the jaw associated with its use and in light of other risks of serious injuries to foreseeable users.

56.     Defendant Merck, its agents and employees, failed to provide adequate warnings with Fosamax, rendering it unreasonably dangerous and unfit for the intended, reasonably foreseeable purposes for which it is used, in breach of warranty.

57.     Plaintiff justifiably and detrimentally relied upon the warranties and representations of Defendant in the purchase and use of the product.

58.     As a direct and proximate result of the acts and omissions of Defendant, Plaintiff ingested Fosamax and developed osteonecrosis of the jaw which resulted in physical impairment and other injuries. As a further direct and proximate result of the acts and omissions of Defendant, Plaintiff has been prevented from pursuing normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of ordinary pursuits and enjoyments of life.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages and costs of suit as provided by law.

### COUNT V
### PLAINTIFF v. MERCK
### VIOLATION OF CONSUMER FRAUD ACT

59.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

60.     Fosamax is a "good" as that term is defined in the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, hereinafter, the ("Act").

11

61.    Defendant, Merck, is a "person", "company", or "seller" as that term is defined in the Act, and as such, is prohibited from engaging in deceptive acts and practices, as set forth more fully below.

62.    The Act prohibits deceptive acts and practices, including but not limited to passing off goods as those of another; representing that goods have specific sponsorship, approval, characteristics, ingredients, benefits, affiliation or status that they do not have; or engaging in fraudulent or deceptive conduct which creates the likelihood of confusion or misunderstanding.

63.    The following acts, uses or employments by Defendant constitute unconscionable commercial practices, deceptions, frauds, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with intent that Plaintiff relies upon such concealment, suppression or omission, in connection with the sale and marketing of Fosamax, are unlawful under the Act:

> (a) Defendant, having undertaken the manufacturing, marketing, dispensing,
> distribution, and promotion of the drug described herein, owed a duty to
> provide accurate and complete information regarding this product;
>
> (b) Defendant's advertising program, by affirmative misrepresentations and
> omissions, falsely and deceptively sought to create the image and impression
> that the use of Fosamax was safe for human use and did not have unacceptable
> side effects;
>
> (c) On information and belief, Defendant misrepresented to Plaintiffs and to
> members of the general public its knowledge about the propensities of the
> product to cause injuries such as those sustained by Plaintiff. Defendant

12

concealed, failed to disclose, misstated, downplayed and understated the
health hazards and risks associated with the use of Fosamax. Defendant
falsely and deceptively kept relevant information from Fosamax users and
minimized concerns regarding the safety of Fosamax to induce Plaintiff and
the general public to purchase and use Fosamax;

(d) In justifiable and detrimental reliance on the truth of Defendant's
representations about the safety of Fosamax, Plaintiff purchased the product
and used the product in the manner and for the purpose intended as
represented and instructed by Defendant; and

(e) the representations, misrepresentations, acts and omissions made by
Defendant deprived Plaintiff and other foreseeable users of Fosamax of the
opportunity of free choice as to whether or not to expose themselves to the
aforementioned dangers of ingesting Fosamax.

64.    As a direct and proximate result of Plaintiff's lack of awareness of the dangers of
Fosamax, caused by the acts and omissions of Defendant, Plaintiff ingested Fosamax and
developed osteonecrosis of the jaw which resulted in physical impairment and other injuries.

65.    As a further direct and proximate result of the acts and omissions of Defendant,
Plaintiff has been prevented from pursuing her normal activities and employment, has
experienced severe pain and suffering and mental anguish, and has been deprived of ordinary
pursuits and enjoyments of life.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory
damages, punitive damages and costs of suit as provided by law.

13

### COUNT VI
### PLAINTIFF V. MERCK
### NEW JERSEY PRODUCTS LIABILITY ACT

66.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

67.    Defendant is liable to plaintiff pursuant to the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 *et seq.*

68.    Defendant is under a duty to supply a product that is reasonably fit, suitable or safe for its intended use, such that it is not unreasonably dangerous and such that it does not cause injury to a reasonably foreseeable user.

69.    Defendant has failed to meet the obligation of supplying a product that is reasonably fit, suitable or safe for its intended purpose and which is not unreasonably dangerous, in that they have placed the product Fosamax into the stream of commerce when Fosamax had been defectively manufactured, defectively designed and failed to contain adequate warnings, labels or instructions.

70.    Plaintiff alleges that at all times, the product Fosamax was defective when it left Defendant's control and the product was not substantially altered prior to reaching Plaintiff.

71.    As a direct and proximate result of the acts and omissions of Defendant, Plaintiff, a reasonably foreseeable consumer, ingested Fosamax and developed osteonecrosis of the jaw which resulted in physical impairment and other injuries. As a further direct and proximate result of the acts and omissions of Defendant, Plaintiff has been prevented from pursuing her normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of her ordinary pursuits and enjoyments of life.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages and costs of suit as provided by law.

14

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury as to all Counts.

Respectfully submitted,

ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.

DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
Attorneys for Plaintiff

Dated: 6/28/07

15

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, David Jacoby, Esquire, Tracy A. Finken, Esquire, Gregory S.

Spizer, Esquire, along with Sol H. Weiss, Esquire, pending his admission, are hereby designated

as trial counsel for Plaintiffs in the within matter.

Respectfully submitted,

ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.

DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
Attorneys for Plaintiff

Dated: _6/28/07_

16

## NOTICE OF OTHER ACTION

Pursuant to R. 4:5-1, I hereby certify that the matter in controversy is not the subject of

any other pending or contemplated court action, arbitration or worker's compensation claim.

Respectfully submitted,

**ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.**

**DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
Attorneys for Plaintiff**

Dated: _6/28/07_

17

## CERTIFICATION

The undersigned certifies that to the best of my knowledge this matter is not the subject

of any other legal or arbitration proceeding in the Courts of New Jersey. The undersigned

further certifies that to the best of my knowledge, no other persons should be a party to this

matter other than those named in this Complaint.

Respectfully submitted,

ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.

DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
Attorneys for Plaintiff

Dated: _6/28/07_

18

# EXHIBIT B

07/03/07  11:20 FAX 908 688 0885          GUARANTEED SUBPOENA                    ☑019

---

## CIVIL CASE INFORMATION STATEMENT
### (CIS)

Use for initial Law Division - Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.

| FOR USE BY CLERK'S OFFICE ONLY | | | |
|---|---|---|---|
| PAYMENT TYPE | CK | CG | CA |
| CHG / CK NO | | | |
| AMOUNT : | | | |
| OVERPAYMENT. | | | |
| BATCH NUMBER: | | | |

**ATTORNEY / PRO SE NAME**
David Jacoby, Esq. & Tracy A. Finken, Esq.

**TELEPHONE NUMBER**
(856) 482-1600

**COUNTY OF VENUE**
Middlesex County

**FIRM NAME** (if applicable)
Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.

**DOCKET NUMBER** (When available)
L-5863-07

**OFFICE ADDRESS**
1040 Kings Highway North, Suite 304
Cherry Hill, NJ 08034

**DOCUMENT TYPE**
Complaint

**JURY DEMAND**
☑ YES   ☐ NO

**NAME OF PARTY** (e.g. John Doe, Plaintiff)
Tamma Mahuron

**CAPTION**
Mahuron v. Merck & Co., Inc.

**CASE TYPE NUMBER**
(See reverse side for listing)
606

**IS THIS A PROFESSIONAL MALPRACTICE CASE?** ☐ YES ☑ NO
IF YOU HAVE CHECKED "YES", SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

**RELATED CASES PENDING?** ☐ YES ☑ NO

**IF YES, LIST DOCKET NUMBERS**

**DO YOU ANTICIPATE ADDING ANY PARTIES** (arising out of same transaction or occurrence)? ☐ YES ☑ NO

**NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN**
☐ NONE   ☑ UNKNOWN

---

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

---

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**A.  DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?** ☐ YES ☑ NO
**IF YES, IS THAT RELATIONSHIP** ☐ EMPLOYER-EMPLOYEE  ☐ FRIEND / NEIGHBOR  ☐ OTHER (explain)
☐ FAMILIAL   ☐ BUSINESS

**B.  DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?** ☐ YES ☑ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION.

**DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?** ☐ YES ☑ NO
IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION:

**WILL AN INTERPRETER BE NEEDED?** ☐ YES ☑ NO
IF YES, FOR WHAT LANGUAGE:

**ATTORNEY SIGNATURE**

Revised July 2001

---

JUL 03 2007 12:41                                  908 688 0885        PAGE.19